IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

Clark Walker,

             Plaintiff,

    v.

Contra Costa County and Keith Richter,

             Defendants.

NO. C03-3723 TEH

ORDER GRANTING IN PART, DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION

      Plaintiff Clark Walker brought suit against Contra Costa County ("County") and Keith Richter (Fire Chief) under 42 U.S.C. §§ 1981 and 1983 and Title VII of the Civil Rights Act of 1964 for alleged racial discrimination and retaliation. This matter came before the Court on Monday July 25, 2005, on Defendants' motion for summary judgment or summary adjudication. After carefully considering the parties' written and oral arguments, relevant case law, and the factual allegations in this case, the Court grants in part, and denies in part, summary adjudication for the reasons discussed below.

**BACKGROUND**

      Plaintiff alleges that he has suffered several adverse employment decisions and has been treated differently on account of his race or participation in protected activities. Most recently, Plaintiff alleges that he was retaliated and discriminated against when the Contra Costa County Fire Protection District ("District") failed to promote him to one of two vacant Assistant Fire Chief positions in 2003 (one relating to operations and the other to services), filling those positions with white applicants. Plaintiff also was not selected for this position in 2000.

Plaintiff asserts five causes of action: (1) a violation of § 1981 for intentional race discrimination against all Defendants; (2) a violation of Title VII for race discrimination in employment against Defendant County; (3) a violation of Title VII for retaliation for engaging in protected activities against Defendant County; (4) a § 1983 violation for race discrimination against Defendant Richter; and (5) a § 1983 violation based on discriminatory customs, policies, and practices against Defendant County.

Briefly, plaintiff makes the following allegations of historical and recent discrimination against him. Plaintiff alleges impropriety in the selection for the Battalion Chief position in 1985. Plaintiff sued the District on this matter, but later dropped the suit when he subsequently attained the position. In 1998, the District investigated possible cheating on the Captain's exam allegedly because three of the top four candidates were African-American, and the District refused to release the results of the investigation. In 1999, Plaintiff contends that he was not invited to, and was intentionally excluded from, the first Management Labor Retreat convened by Defendant Richter, despite being the elected president of the United Chief Officers' Association (UCOA). Richter opposes the *Croskrey* Consent Decree.[1] In 2000, in a meeting with Black Firefighters Association representatives to discuss the group's concerns about racial and gender bias in hiring an all-white male firefighter paramedic class, Defendant Richter stated, "I don't hire by the consent decree." In November 2002, Defendant Richter banned the *Croskrey* Consent Decree Board from using the District's training center, and there is some question as to whether other groups were permitted to use the facility. Since Defendant Richter became Fire Chief, recruiting and outreach for minority candidates has virtually ceased. Finally, Plaintiff alleges that the hiring criteria and process were changed between the 2000 and 2003 selection for the Assistant Fire Chief Position to create a procedure less favorable to Plaintiff.

---

[1] In 1975, the County entered into a consent decree which requires the County to take affirmative action to promote women and minorities in job classifications where they are not proportionally represented. *Croskrey v. Contra Costa County,* U.S. District Court Case No. C73-0906 JCS.

2

**LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of the law." FRCP 56(c); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material for the purposes of summary judgment if, when applied to the substantive law, it effects the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine the evidence in the light most favorable to the non-moving party. *U.S. v. Diabold, Inc.*, 369 U.S. 654, 655 (1962). Summary judgment should not be granted unless the evidence could not support any reasonable inference for the non-moving party. *Stegall v. Citadel*, 350 F.3d 1061, 1067. (9th Cir. 2004); see also *Desert Palace v. Costa*, 539 US 90, 100 (2003). Further, summary judgment is appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp*, 477 U.S. at 322.

**DISCUSSION**

*A. Statute of Limitations*

The statute of limitations bars Plaintiff's potential claims for discrimination or retaliation brought under 42 U.S.C. §§ 1981 and 1983 that accrued prior to January 1, 2002. Plaintiff did not respond to this defense in his papers, nor did Plaintiff offer any objection at oral argument. There is no genuine issue of material fact as to the applicability of the statute of limitations.

The statute of limitations also bars Plaintiff's claims for discrimination or retaliation brought under Title VII of the Civil Rights Act of 1964 that accrued prior to July 13, 2002. 42 U.S.C. 2000e-5. Again, Plaintiff did not respond to this contention in his papers, nor did Plaintiff object to this conclusion at oral argument. There is no genuine issue of material fact as to the applicability of the statute of limitations.

3

### B. Failure to Promote Plaintiff to the Fire Chief Position in 1998

Although claims arising out of a failure to promote Plaintiff to the position of Fire Chief in 1998 are barred by the various statutes of limitations referenced above, Defendants also seek summary adjudication on all claims against Defendant Richter arising from the District's decision to select Defendant Richter for Fire Chief in 1998. This portion of the motion is uncontested. There is no genuine issue of material fact. Indeed, Defendant Richter cannot be vicariously liable for the District's decision to select him over Plaintiff for the position. Title VII does not hold the individual who attains a position as result of a discriminatory decision liable for that decision. 42 U.S.C. 2000e-2(a)(1). Further, "*individual* defendants cannot be held liable for damages under Title VII." *Miller v. Maxwell's Int'l*, 991 F.2d 583, 587 (9th Cir. 1993). Thus, to the extent that Plaintiff is relying on this incident and pre-1998 events to support his claim, they cannot be used to support a claim against Defendant Richter personally.

### C. § 1981 Claims Against a Public Employer

Section 1981 provides that "all persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42. U.S.C. § 1981. The Supreme Court has clarified when a promotion is actionable under § 1981:

> Whether a promotion claim is actionable under § 1981 depends on whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer. If so then the employer's refusal to enter into the new contract is actionable under §1981. In making this determination, a lower court should give a fair and natural reading to the statutory phrase ' the same right ... to make ... contracts,' and should not strain in an undue manner the language of § 1981. Only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981.

*Patterson v. McLean Credit Union,* 491 U.S. 164, 185 (1989). A promotion of Plaintiff Walker from Battalion Chief to Assistant Fire Chief would appear to fall within the Supreme Court's restrictive guidelines. Walker would move from non-exempt to exempt status and he would have new and added responsibilities.

4

Defendants do not argue that the promotion is insufficient to result in the formation of a new contract, but instead contend that public employment in California is statutory, not contractual, making § 1981 inapplicable to a public employee who sought promotion to another public employment position. The Court rejects this contention. Section 1981 applies to both private and public actors. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459-460 (1975). The Court also rejects Defendants' reliance on *Miller v. State of California*, a case dealing with a change in the mandatory retirement age for state employees. 18 Cal.3d 808, 811 (1977). In *Miller*, the California Supreme Court held that "public employment is not held by contract, but by statute." *Id.* at 813. However, *Miller* focused on whether a public employee may have a vested contractual right to continued employment beyond the time fixed by statute. *Id.* *Miller* did not address claims brought under § 1981, and the Court finds it inapposite in the present circumstances.

The Ninth Circuit addressed the right to contract under § 1981 in *Judie v. Hamilton*, 872 F.2d 919, 923 (9th Cir. 1989). The court noted that claims involving discriminatory rejection or discharge are distinguishable from the kinds of employment terms that are appropriately deemed held by statute rather than contract. *Id.* at 922.

Further, if a promotion does not create a contract because all public employment in California is statutory, then California public employers would be provided with blanket immunity from § 1981 liability. Although public employment in California is statutory, and a public employee has no vested contractual interest in a number of terms and conditions of employment, it does not follow that once a public position is developed the hiring into that position itself would not create a vested contractual interest sufficient to fall within the scope of § 1981.

5

The Court therefore holds that denial of a promotion based upon race restricts Plaintiff's ability to contract for employment. Thus, a promotion in the public employment realm can create a sufficiently vested interest to permit a § 1981 claim.[2]

Defendants' request for summary adjudication for all § 1981 claims arising out of Defendants' failure to promote Plaintiff is improper because there is a sufficiently vested contract interest in promotion to a new and distinct position.

### D.  Pattern or Practice of Discrimination

Defendants request summary adjudication on Plaintiff's fifth cause of action – a § 1983 claim against Defendant County – because Plaintiffs' allegations are not sufficient to state a claim. Although Plaintiff did not respond to this argument in his papers, at oral argument Plaintiff conceded that discovery did not yield sufficient evidence to support a pattern or practice claim against Defendant County. Since Plaintiff has admittedly failed to allege facts sufficient to support a pattern or practice case against Defendant County, Plaintiff cannot pursue this claim.

### E.  Disparate Treatment Claims Arising Out of Plaintiff's Non-Selection for Assistant Fire Chief in 2003

To survive summary judgment on a disparate treatment claim, a plaintiff must first state a prima facie case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973). A plaintiff must show: (1) that he belongs to a protected group, (2) that he was qualified, (3) that he suffered an adverse employment action, and (4) the position remained open or another

---

[2] The Fifth Circuit came to a similar conclusion when the court determined that § 1981 was applicable to political appointees. Despite a deputy sheriff being a political appointee not a contractual employee under state law, the Fifth Circuit found that the plaintiff has a viable claim under § 1981. Specifically, the Fifth Circuit noted:
> [D]espite the indefinite tenure of the job of deputy sheriff, the sheriff and his deputies had expectations arising from the deputy's employment. The sheriff promised to pay his deputies a stated salary. In return the deputies promised to perform their jobs. We hold that the employment relationship presented in this case was sufficient to bring [plaintiff] under the protective umbrella of § 1981.

*Adams v. McDougal*, 695 F.2d 104, 108 (5th Cir. 1983).

6

employee with similar qualifications was treated more favorably. *Sischo-Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 1109-1110 (9th Cir. 1991). Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate "a legitimate non-discriminatory reason" for the challenged action. *Id.* at 1109. If the employer does so, the burden shifts back to the plaintiff to show that the articulated reason is pretextual. *Id*. At the summary judgment stage, the plaintiff need only present "minimal" proof that "does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). Defendants stipulate for the purposes of this motion that Plaintiff has the evidence to make a prima facie case with respect to non-promotion.[3]

In a "mixed-motive" case there is no one "true" motive behind the decision. Instead, the decision is a result of multiple factors, at least one of which is legitimate. *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1067 (9th Cir. 2003). In such cases, a "jury should be instructed to determine first whether the discriminatory reason was 'a motivating factor' in the challenged action. If the jury's answer to this question is yes, then the employer has violated Title 7." *Id.*

On the facts presented in this motion, there is a genuine issue of material fact as to whether race was a motivating factor in the District's decision. Specifically, there are triable issues as to whether the subjective evaluations of Plaintiff were in part motivated by racial discrimination, whether Plaintiff was more qualified than the candidates selected, whether the ad hoc changes to the hiring process were initiated with an improper motive and whether changes to the process resulted in the non-selection of Plaintiff. Thus, summary adjudication is denied on the merits of Plaintiff's claim of discrimination based upon race for the non-selection of Plaintiff for the Assistant Fire Chief position in 2003, as discussed in greater detail below.

*1. Racial Animus*

---

[3] Defendants stipulate that Plaintiff is an African American, that he met the minimum qualifications for the position, that he was not selected for the position, and that those who were selected were white.

7

Plaintiff alleges that Richter demonstrated a racially discriminatory animus, particularly through his opposition to a court mandated obligation to ensure equal employment opportunity. Some of the incidents that would support this notion include: (a) In 1998, Defendant Richter launched an investigation into alleged cheating by African American fire fighters and refused to release the findings (Walker Decl. 8:24-9:10);[4] (b) since Defendant Richter became Fire Chief, recruiting and outreach for minority candidates virtually ceased (Price Decl., Ex. K 50:10-17); (c) in 2000, in a meeting with the Black Firefighters Association representatives to discuss the group's concerns regarding racial and gender bias in the hiring of an all-white male firefighter paramedic class, Defendant Richter stated "I don't hire by the consent decree" (Walker Decl. 15:2; see also Price Decl. Ex. L 42:1-49:25, 55:1-25); (d) in November 2002, Defendant Richter banned the *Croskrey* Consent Decree Board from using the District training center, and there is some question as to whether other groups were permitted to use the facility (Walker Decl. 15:20-16:1).

*2. Pretext*

There is a genuine issue of material fact as to whether Defendants' stated reasons for the decisions made in 2003 are pretextual. Defendants maintain that the chosen candidates were more qualified. Defendants further posit that simple statements from the Plaintiff that he is more qualified are not sufficient to create a material issue and that the Court should not act as a super personnel department in reviewing which employees are best qualified. *Tunnel v. Powell,* 219 F. Supp. 2d 230, 239 (N.D. Cal. 2002). However, the Ninth Circuit has held that "subjective practices are particularly susceptible to discriminatory abuse and should be closely scrutinized." *Atonio v. Wards Cove Packing Co.*, 810 F.2d 1477, 1481 (9th Cir. 1987). Many

---

[4] Defendants contend that this evidence cannot establish bias absent some evidence that either there was no reason for the investigation, that other cheating allegations were not investigated or that results of other personnel investigations were made public. Defendants contend that there is no such evidence. Plaintiff contends that the investigation of cheating was initiated because three of the top four successful candidates on the written exam were African American, the results of the investigation were not released and that it was a source of controversy between the Black Firefighters Association and Richter for several years. Although Defendants have noted some of the limitations of this evidence, it is the obligation of the Court to view evidence in the light most favorable to the Plaintiff.

8

of the criteria chosen, as well as aspects of the decision-making process, for selecting candidates for the two Assistant Fire Chief positions in 2003 were subjective.

Plaintiff identifies a number of changes to the hiring process that could be pretexts for selecting another candidate. The 2003 Assistant Fire Chief Position openings were the first time that the position was opened to candidates from outside the Department.[5] (Walker Decl. 16:10). Defendant Richter also asserted that the two vacant positions were interchangeable, necessitating that both needed a background in Support Services, while Plaintiff's primary area of expertise is operations. (Walker Decl. 17:25-17:27). Further, the examination was skewed to addressing administrative support concern – 11 of the 14 questions dealt with support services.

Additionally, after Plaintiff finished as one of the top candidates under the initial panel, Defendant Richter convened a second panel; this was an unprecedented move in the hiring process. (Walker Decl. 16:13-14). One of the members of this second panel had been involved in the issues that led to Plaintiff's first suit against the County in 1985. (Walker Decl. 16:20-28; Price Decl. Ex. J 57:5-9). Richter also asked a question regarding lateral hiring that was not on the standard list of questions and that was a "hot button issue which the Black Firefighters Association had opposed [because] lateral hiring ... would provide for an all white recruitment pool." (Walker Decl. 10:11-17. 10:22-23). Further, Plaintiff alleges that Defendant Richter scored the candidates before the final interview for the position had taken place. (Price Decl. 84:5-85:20; Ex. B290:16-291:13; Ex. N 4; Ex. 120). Many of the factors that Plaintiff scored lower on were highly subjective, such as inter-personal skills. (Richter Decl. Ex. 123).

Thus, there are genuine issues of material fact compelling the Court to deny summary adjudication on this claim.

---

[5] Defendants contend that one of the reasons for opening up the position to outside candidates was to increase diversity of the available pool of applicants. (Richter Decl. 3:20-4:16). Whether true or not, at this point it remains a material issue of dispute.

9

*F. Retaliation Claims Arising Out of Plaintiff's Non-Selection for Assistant Fire Chief in 2003*

The elements of a prima facie case for retaliation under Title VII include: (1) that the plaintiff engaged or was engaging in activity protected by Title VII; (2) the employer subjected the employee to an adverse employment decision; and (3) a causal link exists between the protected activity and the employment decision. *Yartzoff v. Thomas*, 809 F.2d 1371, 1375-6 (9th Cir. 1987). After the elements of the prima facie case are satisfied, the same burden shifting scheme occurs as described in the previous section.

Defendants contend that Plaintiff fails to present a prima facie case of retaliation because the causal connection between protected activity and an adverse employment action is too weak. The Ninth Circuit has held that there must be a "causal link." *Manatt v. Bank of Am.*, 339 F.3d 792, 802 (9th Cir. 2003). Specifically, the Ninth Circuit noted that a court may not infer causation from temporal proximity alone unless the gap is "very close," and that gaps of three and four months often are insufficient to infer causation. *Id.* However, the Ninth Circuit has also held that "even if elapsed time, considered without regard to other circumstances, were the criterion, three to eight months is easily within the time range that supports an inference of retaliation." *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003). Thus, a "specific time period cannot be a mechanically applied criterion." *Id.* at 977-978.

In addition to the timing, the context of the events is important and needs to be examined to determine if there is a causal link. Here, Plaintiff's last protected act occurred in November 2002 when Plaintiff attempted to host a *Croskrey* Consent Decree Advisory Board meeting at the District's training facility. Plaintiff took the exam for the position in February 2003 and was denied the position in March 2003. Thus, Plaintiff alleges that the first opportunity for adverse action was not until three months after his last protected act. Given Defendant Richter's opposition to the *Croskrey* consent decree, Plaintiff's history of participation in protected activities and the timing between the incidents, Plaintiff has provided sufficient evidence to shift the burden to the Defendants.

10

Defendants respond, as with respect to the discrimination claim, by arguing that the promotion denial was because Plaintiff was not the most qualified candidate. However, Plaintiff presents material disputes of fact as to whether this ground is pretext. Plaintiff was the only in-house candidate among the top finalists, and he was more familiar with the daily operations of the District than the other candidates. Plaintiff had 30 years experience in comparison to the two selected candidates who had 27 or 28 years of experience. (Richter Decl. Ex. F, D, E). Plaintiff had 30 years experience in operations while the two individuals selected had just 11 and 8 years respectively. *Id.* The ad hoc changes to the hiring process, viewing the positions as interchangeable, the question on the lateral hiring of paramedics that was not on the standard list of questions, in addition to Plaintiff's experience, create issues of material fact as to whether retaliation played a role in Defendants' failure to select Plaintiff for the position. The Court therefore finds that the facts surrounding this incident create material disputes that prevent the Court from granting summary adjudication on the retaliation claim.

**CONCLUSION**

Based on the discussion above, and with GOOD CAUSE APPEARING, the Court now DENIES summary judgment, and GRANTS summary adjudication in part and DENIES it in part, as follows.

The Court GRANTS Defendants' motion for summary adjudication on the claims barred by the statute of limitations. Specifically, Plaintiff's §§ 1981 or 1983 claims accruing before January 1, 2002 are time-barred. Additionally, Plaintiff's Title VII claims accruing prior to July 13, 2002 are time-barred.

The Court GRANTS summary adjudication on Plaintiff's claims against Defendant Richter arising out of Plaintiff's non-selection for the Fire Chief position in 1998 and any prior incidents of discrimination or retaliation.

11

1  The Court DENIES summary adjudication on Defendants' assertion that a § 1981 claim cannot be brought against a public employer.  Although employment in California is statutory not contractual, individuals still have a vested contractual interests in hiring and promotions.

The Court GRANTS summary adjudication on Plaintiff's § 1983 claim against Defendant County.  Plaintiff has presented insufficient evidence to establish a pattern or practice case against the County.

The Court DENIES summary adjudication on whether discrimination was a motivating factor in Defendants' decision not to promote Plaintiff to one of the Assistant Fire Chief Positions in 2003.

The Court DENIES summary adjudication on whether Defendants retaliated against Plaintiff when Defendants decided not to select Plaintiff for one of the Assistant Fire Chief Positions in 2003.

**IT IS SO ORDERED.**

DATED:  9/6/2005                             /s/
                                            THELTON E. HENDERSON, JUDGE
                                            UNITED STATES DISTRICT COURT

12