1
2
3
4            IN THE UNITED STATES DISTRICT COURT
5            FOR THE NORTHERN DISTRICT OF CALIFORNIA
6
7
8    CLARK WALKER,
9                     Plaintiff,                    NO. C03-3723 TEH
                                                    NO. C05-2800 TEH
10               v.
                                                    ORDER GRANTING IN PART
11   CONTRA COSTA COUNTY, et al.                    AND DENYING IN PART THE
                                                    PARTIES MOTIONS IN LIMINE
12                   Defendants.
13
14
15           After carefully considering the parties' written arguments and finding oral argument
16   to be unnecessary except as set out in the Court's Order on Defendants' Motions in Limine
17   concerning the Consent Decree, the Court hereby rules on the parties' remaining motions in
18   limine as follows:
19
20
21   **PLAINTIFF's MOTIONS**
22
23
24   **Plaintiff's Motion To Exclude Opinions of Defense Expert Ron Gesner**
25           Defendants plan to introduce opinion testimony by Ron Gesner– the Battalion Chief
26   to whom Plaintiff transferred command at the Kirker Pass Road fire.  Defendants designated
27   Chief Gesner as a potential expert witness in order to introduce two opinions: 1) that at the
28

United States District Court

For the Northern District of California

1    time he took incident command, "the fire was 'active' in the area of the rollover accident, and

2    the incident was not 'de-escalating;'" and, 2) that "a face to face transfer of command is

3    standard, preferable, and more effective than other methods."   Defendants argue Gesner's

4    opinions are relevant for their substance and because Chief Grace relied on Gesner's

5    opinions during his investigation of the incident and subsequent discipline of Plaintiff.

6    

7        Plaintiff moves to exclude Gesner's opinion testimony that face-to-face transfer is

8    "standard, preferable, and more effective" than other methods of transfer on the ground that

9    it does not meet the standards for expert testimony set out in Fed. R. Evid. 702 and Daubert

10   v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 590-91 (1993), and other applicable

11   law.[1]   Plaintiff's motion is GRANTED in part and DENIED in part.

12   

13       A witness qualified as an expert by knowledge, skill, experience, training, or

14   education, can offer an opinion based on scientific, technical, or other specialized knowledge

15   if it will assist the trier of fact.   Fed. R. Evid. 702.  To be admissible, expert testimony must

16   be both relevant and reliable.  Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589

17   (1993); Kumho Tire v. Carmichael, 526 U.S. 137 (1999).  The trial court has a "special

18   obligation" to determine the relevance and reliability of an expert's testimony "to ensure

19   accurate and unbiased decision-making by the trier of fact."  Mukhtar v. Cal. State Univ.,

20   Hayward, 299 F.3d 1053, 1063 (9th Cir. 2002) (citation omitted).  The proponent has the

21   

22   

23   

24   

25   

26   _____

27       [1]  Although Plaintiff's motion is to exclude all "opinion testimony" by Gesner,
     Plaintiff has not offered specific argument relating to Gesner's ability to testify about
     whether the fire was active or the incident was escalating.   Moreover, Gesner's is based in

28   his first hand knowledge of the fire and application of his 25 years' experience in the fire
     service.  Accordingly, that testimony will be permitted.

2

1  burden of establishing that pertinent admissibility requirements are met and that the opinions

2  offered are reliable.  Bourjaily v. United States, 483 U.S. 171, 172 (1987); In re Paoli R.R.

3

4  Yard PCB Litigation, 35 F.3d 717, 744 (3d Cir. 1994)(proponent must establish reliability).

5      Defendants argue that Chief Gesner's "extensive and direct experience with incident

6

7  command as exercised in the Fire District," and his partial reliance upon FPD documentation

8  concerning the transfer of incident command, provides a sufficient basis for his opinion that

9  face to face transfers are "standard, preferable, and more effective than other methods."

10 Where a witness relies solely or primarily on experience, then the witness must explain 1)

11

12 "why that experience is a sufficient basis for the opinion;" 2) "how the experience leads to

13 the conclusion reached;" and 3) "how that experience is reliably applied to the facts."  Adv.

14

15 Comm. Notes to 2000 Amendments to Fed. R. Evid. 702.  Chief Gesner's opinion that a

16 face-to-face transfer of command is "preferable, and more effective than other methods," is

17 sufficiently based on his experience of transferring incident command, which he has done,

18

19 either as a battalion chief or as a captain, over 100 times.  Although Plaintiff discounts

20 Gesner's experience gained while he was a captain, Plaintiff has offered no reason to believe

21 considerations involving the continuity of incident command and the efficacy of face-to-face

22

23 transfers would differ depending on  the rank of the individual transferring command.

24      Moreover, Gesner explicitly explained how his experience led him to conclude that

25

26 face-to-face transfers were superior to other methods (that the person in command of an

27 incident has "the most amount of data," that "[i]t takes excellent communication skills" to

28 transfer that information in a "concise, thorough manner," and that even in a face-to-face

3

transfer, some information is always lost).  Finally, Gesner appears to have reliably applied his experience to the facts of the present case; he concluded a face to face transfer would have been preferable because the Captain who did the transfer was unable to answer particular questions that Chief Gesner believes Plaintiff would have been better able to answer.   Gesner's specialized testimony that face-to-face command transfer is preferable is relevant, reliable, and will be admitted.

Gesner's opinion that face-to-face transfer is "standard," however, is not sufficiently reliable to be admitted under Rule 702.  Gesner's deposition makes it clear that he was not relying on any specific Fire Protection District ("FPD") policies, procedures, or rules to inform his opinion that face-to-face transfer was "standard."  Gesner Depo. at 19, 20, 33, 34. He did no investigation within the FPD on transfer of incident command practices, id. at 39, nor did he investigate what the practices of other incident commanders have been.  Id. at 40. There is no evidence to suggest Gesner conducted any research or has any knowledge of what practices are "standard" outside his own fire protection district.

To be able to render an expert opinion about what is "standard" practice, the Court would expect Gesner to, at a minimum, review relevant policy and practice guidelines and documentation, and likely investigate the practices of other fire professionals in that same department or locality.  Gesner has failed to show that his opinion about the "standard" practice is reliable, and may not present opinion testimony on that topic.

Nonetheless, employees generally operate with an understanding of what the standard practices and policies are in a place of employment.  Here, Gesner's own understanding of

United States District Court

For the Northern District of California

the "standard" practice informed his report to Defendant Grace. Gesner may, therefore, testify to his own understanding, as an employee, of what the standard transfer of incident command practice was <u>at the relevant time</u>. He may not testify to any post-hoc research he may have done to determine what standard practice is, either in Contra Costa or elsewhere. He may not testify to bases for his opinion beyond those he listed at his deposition.

**Plaintiff's Motion to Exclude Opinions of Defense Expert Gerald Udinsky**

Defendants plan to offer Dr. Gerald Udinsky's expert opinion testimony that "[P]laintiff received substantially more compensation as a Battalion Chief in the period 2003 to 2005 than he would have had he been promoted to Assistant Chief in 2003." Dr. Udinsky testified that "he did not calculate the economic value of [Plaintiff's] pension benefits." Accordingly, Plaintiff moves to exclude any opinions by Dr. Udinsky on the economic value of Plaintiff's retirement benefits. Defendants do not oppose the motion, but contend they should be entitled to introduce Dr. Udinsky's pension calculations "in pure rebuttal only" if some witness for the Plaintiff calculates the economic value of the benefits.

Any testimony offered by Dr. Udinsky on pension benefits would not be rebuttal evidence. The parties have long known that Plaintiff's retirement benefits might be at issue, and that Plaintiff would likely introduce evidence about his pension benefits. If Defendants wanted Dr. Udinsky to offer expert opinions about Plaintiff's pension benefits, then he was required to include his opinion in his expert report pursuant to Fed. R. Civ. Pro. 26(a)(2)(B), or, to rebut opinion testimony offered by Plaintiff's expert, in a report pursuant to Fed. R.

Civ. Pro. 26(a)(2)(C).  Plaitniff's motion is GRANTED.

**Plaintiff's Motion to Exclude Improper Character Evidence**

Plaintiff moves to exclude evidence of an anonymous complaint about him to the County Board of Supervisors.  Defendants do not oppose the motion.  The motion is GRANTED.

**Plaintiff's Motion to Exclude Allegations re: Falsification of Education Records**

Plaintiff moves to exclude evidence of any allegations that he falsified his educational records from Laney College.  Defendants do not oppose the motion.  The motion is GRANTED.

**DEFENDANTS' MOTIONS**

**Defendants' Motions to Exclude Evidence re: Alcohol Use and Evidence re: Witness John Ross**

Defendants seek to exclude any evidence of abuse of alcohol by Defendant Richter or other District managers.  They also seek to exclude any evidence relating to Assistant Fire Chief John Ross's accident in a district vehicle, his DUI conviction after that accident, and subsequent discipline imposed on him, on the ground that such evidence would be irrelevant, prejudicial, and invades Chief Ross's personal privacy interests.

Plaintiff opposes these motions only as to evidence relating to Chief Ross.[2]  Plaintiff argues that Richter's allegedly lenient discipline of Ross's serious misconduct, when compared to his allegedly harsh discipline of Plaintiff in 2004, is evidence of Richter's favoritism toward Ross, his intent to discriminate against Plaintiff, and that the discipline imposed on Plaintiff was pretextual.

Evidence of Richter's discipline of Ross is relevant.  Disparate discipline of African-American firefighters can be probative evidence of his discriminatory motive and of pretext.  See Costa v. Desert Palace, Inc., 299 F.3d 838, 859-60 (9th Cir. 2002)(disparate discipline can be evidence of discriminatory motive); Heyne v. Caruso, 69 F.3d 1475, 1479-81 (9th Cir. 1995)(evidence of other acts can show discriminatory animus and pretext).  Evidence that Richter transferred Ross to a position of more supervisory responsibility while Ross was on disciplinary probation for the DUI undercuts Richter's position that Plaintiff was disciplined in 2003 for his "poor judgment" rather than for some unlawful reason.[3]  The Court finds that the probative value of this evidence outweighs any prejudice to the Defendants.  Moreover, evidence that Ross was convicted of D.U.I will not unduly invade his privacy interests given

_____

[2]    Plaintiff opposed this motion late.   The parties stipulated, and this Court ordered, that the opposition would be due seven calendar days after the motion was filed. Stipulation and Order, Docket No. 197, filed November 2, 2006.  The Motion was filed on November 2.  Docket No. 198.  The opposition was filed on November 13.  Docket No. 208.  By Order dated November 8, 2006, the Court cautioned the parties that any further late filings would be sanctioned.  Docket No. 202.  Although the Court will consider Plaintiff's opposition to this motion, they Court will sanctions Plaintiff to an amount of monetary sanctions to be determined before the close of the trial.

[3]   Although such evidence could also show Richter's favoritism toward Ross and his "preselection" for the position, "preselection," without more, does not prove discriminatory animus.  As Judge Patel observed in Tunnel v. Powell, 219 F.Supp.2d 230, 240-41 (N.D.Cal. 2002), preselection puts all other candidates – regardless of race, ethnicity, or gender – at an equal disadvantage.

United States District Court

For the Northern District of California

that the conviction is public record and, as Plaintiff represents, has been reported in the local

newspaper.

Defendants' motion to exclude evidence of alcohol use with respect to individual

defendants or other District managers is GRANTED, except as to evidence of John Ross's

DUI accident and conviction.   The motion to exclude evidence relating to John Ross's DUI

accident, conviction, and subsequent discipline is DENIED.[4]

**Defendants' Motion to Preclude Testimony by Plaintiff's Expert Witness Kay Kirkland**

Plaintiff plans to offer opinion testimony by Kay Kirkland, an attorney who served as

an investigator and supervisor for the California Department of Fair Employment and

Housing ("DFEH") from 1972 to 1994.  Kirkland will opine that Defendants' 2003 Assistant

Fire Chief selection process was "tainted" – in other words, "motivated by race." Defendants

move to exclude Kirkland's testimony on the ground that her opinions are irrelevant and

unreliable.  The motion is GRANTED.

Federal Rule of Evidence 702 provides that expert testimony is admissible if

"scientific, technical, or other specialized knowledge will assist the trier of fact to understand

the evidence or to determine a fact in issue." Fed.R.Evid. 702.   To be admissible, expert

testimony must be both relevant and reliable. Daubert v. Merrell Dow Pharms., Inc., 509 U.S.

579, 589 (1993); Kumho Tire v. Carmichael, 526 U.S. 137 (1999).  Encompassed in the

---

[4]  This ruling is not a ruling as to the admissibility of the letter imposing discipline on John Ross.

8

1   determination of whether expert testimony is relevant is whether it will be helpful to the jury,

2   and whether it "address[es] an issue beyond the common knowledge of the average layman."

3

4   Elsayed Mukhtar v. Cal. State Univ., Hayward, 299 F.3d 1053, 1063 n. 7, 1066 n.9 (9th Cir.

5   2002), amended by 319 F.3d 1073 (9th Cir. 2003).

6

7        Plaintiff has failed to meet his burden of showing that Kirkland's opinion testimony is

8   admissible under this standard.[1]  While there is no absolute bar on expert testimony

9   concerning the ultimate issue in a case, see Mukhtar, 299 F.3d at 1066, n.10, Plaintiff has not

10  shown that Kirkland's opinion on the ultimate issue is based on anything more than ordinary

11

12  logic and evaluation of circumstantial evidence.

13       Kirkland is not offered as an expert in statistics, good human resources practices, civil

14  service personnel practices, or hiring policies, procedures, or requirements in fire

15

16  departments.  She is, apparently, offered as an expert in discerning discriminatory intent.

17  Her specialized knowledge is based on her own experience as an investigator at the DFEH

18

19  ("experience in 14,000 cases" that "I either investigated myself or was accountable for as an

20  administrator").[2]  She applied no particular analytical methodology and consulted no outside

21

22  sources or research to reach her conclusions.

23

24

_____

25  [1]   Plaintiff did not offer Ms. Kirkland's report under Fed. R. Civ. Pro. 26(a)(2)(B) in
    opposition to the motion, or genuinely dispute the Defendants' description of Kirkland's
26  experience, analysis, or opinions.  Accordingly, the Court must base its ruling on the
    deposition excerpts offered by the Defendants.

27
    [2]   Kirkland herself has not authored articles or books, nor has she done any teaching in
28  the field.  She has no experience specific to fire departments, and did no research on
    fire department organization, operation, or hiring.

United States District Court

For the Northern District of California

In fact, Plaintiff offers only one concrete example of how Kirkland's "specialized knowledge" would assist the jury:  it would help them analyze whether "the structure of the interview ranking system and the interview questions themselves were biased." But Plaintiff fails to explain why or how.  The evidence before the court suggests that Kirkland's testimony on this topic is not particularly helpful:  she drew her conclusions about the ranking system because the three-grade rating system used -- HQ, Q, and NQ --  "leads to all kinds of subjective selection from one rater to another, particularly a question on interpersonal relationships," and because the rating form had "the two [candidates Richter wanted] in the top three, and Walker at the bottom" instead of being in alphabetical order. Kirkland Depo. at 31, 33.

There is no showing that such opinions flow from specialized expertise beyond the ken of the average juror – such as the expert's experience with drug dealers' slang and code words that passed muster in United States v. Decoud, 456 F.3d 996, 1013-1014 (9th Cir. 2006).   Experience is not always tantamount to expertise.  Kirkland may have evaluated hundreds of discrimination claims, but she appears to have based her opinion that the selection process was "motivated by race" on the same kinds of evidence and critical thinking that the jury will use to decide the same question. For precisely these reasons, numerous courts have held that expert testimony on motive in discrimination cases is inappropriate.  See Kotla v. Regents of the University of California, 115 Cal.App.4th 283, 292-294 (2003)(collecting cases).  In addition, because Kirkland's opinion would add little or nothing of probative value, her opinion on a central issue in the case could unduly prejudice

10

United States District Court

For the Northern District of California

the defendants because it would come "cloaked in authority" and imbued with an "aura of expertise." Mukhtar, 299 F.3d at 1067.

Moreover, Plaintiff has not shown that Kirkland's testimony is sufficiently reliable. Plaintiff argues that the Daubert factors for determining whether expert testimony is sufficiently reliable – testing, error rate, peer review, publication, general acceptance in the community (see Daubert, 509 U.S. at 593-94) – are inapplicable to testimony which rests on the knowledge and experience of the expert, rather than on the scientific or technical theory behind the expert's opinion. See Hangarter v. Provident Life and Acc. Ins. Co., 373 F.3d 998, 1018 (9th Cir. 2004). But any claim to reliability here is undermined by Kirkland's misunderstanding of applicable discrimination law. Kirkland testified that she believed "affirmative action" required the Defendants to give Walker a "plus" because of his race, and to hire him for the Assistant Chief position, because there were no African Americans at the Assistant Chief level. Kirkland Depo. at 34-38, 100-105.[3] She was wrong: at that time, giving Plaintiff preferential treatment on the basis of his race would have violated the California constitution. See Hi-Voltage Wire Works, Inc. v. City of San Jose, 24 Cal.4th 537, 559-560 (2000). Because Kirkland's opinion revolves in large part around whether Richter's decision was motivated by race, this error infects Kirkland's entire testimony.

The Court agrees with the Defendant that "if Kirkland testifies to the opinions she expressed at her depositions, and bases them on the evidence she referred to during that deposition to support them, she will be doing little more than delivering plaintiff's closing

_____

[3]  Kirkland was not referring to the Consent Decree when she made this statement. See Kirkland Depo. at 34-36.

argument from the witness box."   Plaintiff has done nothing to dispel this impression.

Accordingly, Defendants' motion is GRANTED.

**Defendants' Motion to Preclude Evidence of Unrelated Prior Acts Occurring Before May 1998**

Defendants move to exclude evidence of allegedly discriminatory acts, statements, and events that occurred prior to May, 1998.  Specifically, they seek to exclude evidence concerning : (1) racial harassment of another African-American firefighter in 1979;  (2) a 1979 incident in which Plaintiff claims he was prevented from applying for a Battalion Chief position;  (3) Plaintiff's application for a Battalion Chief position in 1985;  (4) Plaintiff's application for Assistant Fire Chief in 1984;  (5) Plaintiff's application for Assistant Fire Chief in 1991; (6)  Plaintiff's application for Fire Chief in 1997, and (7) evidence of Mike George's involvement in legal actions taken by Plaintiff against Defendant County in 1985 and subsequent statements made about Plaintiff's job performance.   Defendants argue that evidence of these prior acts are not relevant to prove either Defendant Richter or Defendant Grace's state of mind regarding the 2003 and 2005 employment decisions that are at issue in this case.

Most of the evidence is not relevant.  Plaintiffs argue in general terms that evidence of prior allegedly discriminatory acts is relevant background evidence, and relevant to prove the Defendants' discriminatory animus or their "knowledge, motive and intent" under Fed. R. Evid. 404(b).   As the Ninth Circuit recently noted in <u>Lyons v. England</u>, 307 F.3d 1092, 1110

**United States District Court**

For the Northern District of California

(9th Cir. 2002), evidence of the employer's discriminatory acts outside the limitations period "may constitute relevant background evidence" which, in the context of a racial disparate treatment claim, means evidence relevant to the defendant's intent.

However, the evidence in categories 1-6 above is not relevant to Richter or Grace's intent to discriminate or retaliate against Plaintiff in 2003 or 2005. Richter was appointed Fire Chief in 1998.  Grace was hired in 2003.   It is undisputed that both worked outside California before joining the County fire protection district.  Neither was even employed by the Defendant County at the time these earlier incidents took place, and neither played any role in these incidents.  Accordingly, the incidents are in no way relevant to their state of mind during 2003 or 2005.[4]

Statements and acts by Mr. George may, however, be relevant to the Defendants' discriminatory intent.  Plaintiff argues that George is biased against him: he was involved in the events which led to Plaintiff's filing a discrimination case in 1985, and he has "admitted on more than one occasion that he was predisposed against Plaintiff based upon his prior involvement in defending the County from Plaintiff's discrimination claims."  Plaintiff claims Defendant Richter nonetheless selected George to sit on the internal interview panel for the Assistant Fire Chief positions in 2003.  Assuming Plaintiff can show that Richter was aware of George's bias, then the evidence at issue goes to Richter's intent, and may suggest that Richter "stacked the deck" against the Plaintiff during the 2003 selection process.  Such

---

[4]  Nor is the County's notice of alleged prior discrimination relevant, as there is no surviving § 1983 claim against the County under <u>Monell v. Department of Social Servs. of New York</u>, 436 U.S. 658, 690-94 (1978).

United States District Court

For the Northern District of California

1   evidence is more probative than prejudicial and will be admitted.

2       Plaintiff also argues that evidence relating to his attempts to promote in 1984, 1991,

3

4   and 1997 are essential to put his emotional distress damages in context, and that he should be

5   permitted to testify to the "cumulative effect of the discrimination on his emotional psyche."

6
    This argument certainly has intuitive appeal; a person who feels he is being denied
7

8   promotion for discriminatory reasons for the third or fourth time may well experience the

9   loss more keenly, and suffer more emotional distress, than a first-time victim of
10
    discrimination.
11

12      Generic rules relating to damages also suggest that a plaintiff should be permitted to

13   present evidence that he was particularly vulnerable to damage.  As the First Circuit

14   explained in <u>Doty v. Sewall</u>, 908 F.2d 1053, 1059 (1st Cir. 1990)

15

16       In personal injury law, it is well settled that in an action for damages, the tortfeasor
         "takes his victim as he finds him." <u>United States v. Feola</u>, 420 U.S. 671, 685 (1975)...
17       <u>Stoleson v. United States</u>, 708 F.2d 1217, 1221 (7th Cir.1983) (explaining eggshell
         skull rule); <u>Pierce v. Southern Pac. Transp. Co.</u>, 823 F.2d 1366, 1372 n. 2 (9th
18       Cir.1987) ("[w]hen an emotional injury causes physical manifestations of distress we
         can see no principled reason why the eggshell plaintiff rule should not apply").
19

20   <u>See also</u> <u>Memphis Community School District v. Stachura</u>, 477 U.S. 299, 306 (1986)(where

21   a plaintiff seeks damages under § 1983, "the level of damages is ordinarily determined

22   according to principles derived from the common law of torts").
23

24      This Court has found at least one case in which a plaintiff was permitted to testify, in

25   a discrimination suit,  that earlier instances of discrimination made his emotional distress

26   more intense.   In <u>Steele v. Title Realty Co.</u>, 478 F.2d 380 (10th Cir. 1973), the plaintiff

27

28

1   testified that

2        in the past on a number of occasions "in college towns across the country" he and his
3        family had been denied housing facilities.  It is understandable that he "was very tired
4        of it" and "upset" over such treatment and was determined to do something about it.

5   Id. at 384.  The court proceeded to uphold the compensatory damage award.  Id.; see also

6   Doty v. Sewall, supra (finding no abuse of discretion where district court admitted evidence

7   of plaintiff's experiences in Vietnam, where plaintiff argued Vietnam experiences made him

8   particularly emotionally vulnerable to defendant Union's acts, which triggered his post

9   traumatic stress disorder).

10       In this case, however, allowing Plaintiff to testify to the details of each incident, his

11  belief that he had suffered discrimination, and the reasons for his belief, would be unfairly

12  prejudicial to the Defendants.  Here, each prior incident relates to alleged discrimination by

13  the same employer; even with a limiting instruction, such evidence would unfairly prejudice

14  and inflame the jury against the defendants.

15       Moreover, under governing limitations law, Defendants are on trial only for events

16  occurring since 2002 – specifically, the 2003 Assistant Fire Chief selection and the

17  investigation and letter of reprimand relating to the Kirker Pass Road fire.   The trial is not,

18  as Plaintiff claims, about "cumulative discrimination."  Allowing Plaintiff to collect damages

19  for his "cumulative" emotional distress would run the risk of having the jury award damages

20  for harm incurred in allegedly discriminatory incidents which are outside the limitations

21  period and which have not been proven.  Allowing Plaintiff to prove the discriminatory

22  nature of each incident would both consume undue time and eviscerate the statute of

United States District Court

For the Northern District of California

15

1  limitation.

2        The risk of unfair prejudice, confusion, and of waste of time is too high.  Plaintiff has

3

4  offered no authority that would permit him to present evidence of prior alleged

5  discrimination that is not relevant to intent, solely on the ground that it is relevant to the

6

7  Plaintiff's emotional distress.

8        Plaintiff will be permitted to give a brief history of his attempts to promote within the

9

10 Department.  However, he will not be permitted to delve into what he believes are the

11 reasons for the County's failure to select him.  He will be permitted to offer evidence relating

12 to Mr. George's bias against him, provided he can lay a foundation that defendant Richter

13

14 knew of his bias.   Defendants' motion is GRANTED in part and DENIED in part.

15

16 **Defendant's Motion in Limine to Preclude Lay Opinion to the Causes of or Fact of**

17 **Plaintiff's Heart Disease.**

18        Plaintiff has suffered from serious heart disease since at least 1995.  Plaintiff plans to

19

20 testify about his experience of his own health over time, and  "the exacerbation of his

21 physical health conditions and the psychological stress stemming from Defendants'

22 discriminatory actions against him," apparently as to allegedly discriminatory actions both

23

24 before and during the limitations period.  He plans to call his treating physician to testify as

25 an expert witness on causation.

26        Defendants move to exclude any evidence by Plaintiff as to the causes of his heart

27

28 disease, on the ground that Plaintiff is not qualified under Fed. R. Evid. 702 to testify to the

16

medical cause of his heart disease.  Defendant also argues that unless Plaintiff can offer

competent evidence (e.g., expert testimony) that links his heart disease to the Defendants'

acts, he should be precluded from offering any testimony about his heart disease at all.

The first question raised by the motion is whether Plaintiff's treating physician can

offer expert testimony as to the causes of Plaintiff's heart disease.   Defendants argue that

"plaintiff has not disclosed any expert competent on the issue" of causation; Plaintiff asserts

in opposition only that he "intends to call" his treating cardiologist, Dr. Woodworth, "to

testify as an expert witness."   The Court interprets this opposition to mean that Dr.

Woodworth was not disclosed as an expert witness pursuant to Fed. R. Civ. Pro.

26(a)(2)(A).[5]

Witnesses planning to offer opinions based on "scientific, technical, or other

specialized knowledge" must be disclosed as expert witnesses pursuant to Fed. R. Civ. Pro.

26(a)(2)(A), regardless of whether those opinions were formed during interaction with a

party prior to the litigation.   See Fed. R. Evid. 701, Advisory Committee Notes to 2000

Amendments ("any part of a witness' testimony that is based upon scientific, technical, or

other specialized knowledge within the scope of Rule 702 is governed by the standards of

Rule 702 and the corresponding disclosure requirements of the Civil and Criminal Rules");

Kirkham v. Societe Air France, 236 F.R.D. 9 (D.D.C. 2006)(expert testimony on causation

by treating physician is subject to disclosure requirements of Fed.R.Civ. Pro. 26(a)(2)(A).)

_____

[5] If Dr. Woodworth was in fact timely disclosed as an expert witness, Plaintiff may seek reconsideration of this ruling upon a showing that he was so disclosed, or some other showing that admission of expert testimony would be appropriate.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1       Assuming Dr. Woodworth was disclosed only as a fact witness, he will not be

2   permitted to offer expert testimony under Fed. R. Evid. 702.   He may testify regarding what

3   he actually observed and what treatment he provided.  A treating physician's testimony

4

5   regarding observations and treatment "are not matters outside the ken of the average juror, so

6   Rule 702 and the disclosure obligations of Rule 26(a)(2)(A) are not triggered." Brandon v.

7   Village of Maywood, 179 F.Supp.2d 847, 859 (N.D.Ill. 2001).

8

9       Whether specific testimony from Plaintiff's treating physician falls within the scope of

10  Fed.R.Evid. 702 may be addressed through appropriate objections when the testimony is

11  presented to the Court.

12

13      The second question is what testimony Plaintiff should be permitted to offer about his

14  heart disease.  Plaintiff concedes that he does not "possess specialized knowledge regarding

15  cardiac pathology," but argues he should be permitted to give lay testimony about "the

16  effects of Defendants' adverse actions on his health."

17

18      Federal Rule of Evidence 701 provides that a witness may give lay testimony in the

19  form of an opinion if it is "rationally based on the perception of the witness," "helpful to a

20  clear understanding of the witness' testimony or the determination of a fact in issue," and

21  "not based on scientific, technical, or other specialized knowledge within the scope of Rule

22

23  702."   Further, "generally plaintiff must prove causation by expert medical testimony except

24  where there is an obvious causal relationship—one where injuries are immediate and direct."

25

26  In re Baycol Products Litigation, 321 F. Supp. 2d 1118, 1125 (D. Minn. 2004) (citation

27  omitted) (internal quotation omitted).

28

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff can certainly testify about his own experience of his health, his stress level, and his symptoms of heart disease, and when they occurred.  However, Plaintiff's lay opinion testimony that he experienced an "exacerbation of his physical health conditions and . . . psychological stress" as a result of Defendants' actions, i.e., Defendants' alleged discrimination of, and retaliation against him, is not testimony about an "obvious causal relationship."   The provenance of heart disease and its symptoms is the subject of specialized medical knowledge; it is not like testimony about what caused a simple physical injury like a broken leg.  The cause of Plaintiff's illness is the province of an expert. Moreover, Plaintiff will not be permitted to testify to otherwise excludable prior acts under the guise of explaining the source of his heart problem.  Defendants' motion is GRANTED.

**Motion to Exclude Evidence re: 1998 Captain's Promotional Examination**

Defendants move to exclude any evidence relating to Defendant Richter's decisions to investigate accusations of cheating by African-American candidates in a 1998 Captain's promotional exam, and Richter's refusal to make the results of that investigation public. Plaintiff represents that he does not plan to offer any evidence relating to the dispute between the Black Firefighter's Association and Richter regarding the examination or the displacement of the African-American who placed first on the list to a lower place on the list. He asserts that the only evidence he plans to offer is that his relationship with Richter soured when he "criticized Richter privately for initiating an investigation of the 1998 Captain's examination simply because three of the five top candidates were African-Americans."  He

19

argues that this information is necessary to put his relationship with Richter "in context."

The implicit allegation that Richter chose to investigate reports of cheating "simply because three of the five top candidates were African-Americans" is highly inflammatory. Absent any foundation for this allegation (which Plaintiff has not offered), it is far more prejudicial than probative.   Plaintiff will be permitted to testify only that he criticized Richter's decision to initiate an investigation into alleged cheating on the examination by African-American firefighters, and to the changes in their relationship that he believes flowed from that criticism.   Defendants' motion is GRANTED in part and DENIED in part.

Counsel shall advise each witness, before that witness testifies, of the limitations imposed on these rulings.

**IT IS SO ORDERED.**

Dated: November 21, 2006

_____

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT