IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CLARK WALKER,

               Plaintiff,

    v.

CONTRA COSTA COUNTY, et al.

               Defendants.

NO. C03-3723 TEH
NO. C05-2800 TEH

ORDER ON DEFENDANTS' MOTIONS IN LIMINE RE: CONSENT DECREE

       Defendants moved to exclude evidence of the Consent Decree entered in <u>Croskrey v. Contra Costa County</u>, United States District Court for the Northern District of California, Case No. C 73 0906 CJS, of the meaning of the Consent Decree, and of defendant Richter's statement or statements that he "d[oes] not hire by the Consent Decree." The Court heard extensive oral argument on the motion on November 28, 2006 and November 29, 2006. For the reasons set out below, the motion is DENIED, without prejudice to objections to specific evidence, as set out below.

       Since 1975, Contra Costa County has been subject to a consent decree entered in <u>Croskrey</u>. In general terms, the goal of the consent decree is to ensure that "the percentage of minorities and females employed in each job classification and each department in county employment reflect the supply of qualified members of minority groups and females in the work force in Contra Costa County." Consent Decree § II.A-1. The Consent Decree provides procedures for identifying imbalances between percentage of County employees in protected

classes and the percentage of protected classes in the relevant work force. Id. §§ II.A-B. It sets out procedures for setting goals and timetables to rectify such imbalances, and procedures for reevaluating minimum qualifications under certain circumstances to ensure that they are related to job performance. Id. It also provides for review of civil service examinations and their results under certain circumstances. Id. § II.C. It requires the County to recruit women and minorities. Id. § II.D. Finally, it creates mechanisms to administering the decree and resolving disputes that might arise under it. Id. §§ II.E, F.

By its own terms, the Consent Decree does not require the County to hire any particular employee. Section III provides:

> Nothing in this Consent Decree shall require or be construed to require defendants to hire, discharge, promote or demote any employee, to hire or maintain more employees than are needed to perform the work available, to create any job classification, or to continue in effect any work or job classification now being performed or in existence.

Plaintiff plans to introduce evidence that he was an ardent supporter of racial diversity in the Department and of the Consent Decree. His position (and that of the Black Firefighters Association ("BFA")) was that the Consent Decree imposed hiring and recruitment requirements on the County. He believed Richter's plan to recruit and hire paramedics laterally from other fire departments (which would result in an all-white entry class) would violate the Consent Decree.

Walker's opposition to what he perceived as unfair hiring practices and violation of the Consent Decree took several forms, including producing a press release with the BFA, writing a letter to the local newspaper about the County's hiring practices, and meeting with Richter in September 2001 about the hiring and discrimination issues. Walker has testified that during this acrimonious meeting, when he argued that "the institutional bias of ignoring diversity goals was against the spirit of the Croskrey Consent Decree," Richter responded he "did not hire by the Consent Decree." Declaration of Clark Walker in Opposition to Defendants' Motion for Summary Judgment or Partial Summary Judgment, Filed April 26, 2005, ¶ 57. Moreover, Walker proposes to introduce evidence that Richter refused to allow the Croskrey Consent Decree Advisory Board, of which Walker was the Chair, use the fire

2

district training facility for its meetings, and that Richter told others that Walker's advocacy on Consent Decree issues had "created problems" for him and the fire district itself.

Defendants move to exclude all evidence relating to the Consent Decree, including Richter's alleged statement that he "d[oes] not hire by the Consent Decree," on the ground it is not evidence of racial animus, that it is irrelevant to Walker's claims, and that it is unfairly prejudicial.

There is little question that the existence of the Consent Decree is relevant to, and even essential to, Plaintiff's discrimination and retaliation claims. He argues that his vocal support for racial diversity in the Department, his advocacy for what he believed were the requirements of the Consent Decree, and his opposition to what he believed was unlawful discrimination in the Department were inextricably intertwined. Together, they constituted "protected activity" for which he suffered retaliation - whether or not he was correct about the legal requirements that the Consent Decree imposed.[1] He claims Richter retaliated against him for this protected activity by failing to select him for the Assistant Fire Chief position in March 2003. Complaint, Case No. 03-3723, Third Cause of Action.

Advocacy for or against a consent decree can form the basis for a retaliation claim. See, e.g., Hicks v. Arkansas Dept. of Health and Human Services, 2006 WL 2551367, *11 (E.D.Ark. 2006)(written complaint that alleged retaliation and referred to party's rights under a consent decree can be a protected activity); Hall v. Alexander, 2002 WL 655317, *1 (M.D.Ala. 2002)(plaintiff claims he suffered retaliation for his opposition to a consent decree that involved racial discrimination in hiring). Moreover, disputes between Richter, the BFA, and Walker about the Consent Decree and its requirements form the context for Walker's claims -- context which cannot be excised from the trial without hamstringing Walker's ability to make his case.

---

[1] Title VII forbids discrimination against employees who attempt to protest or correct allegedly discriminatory employment practices. It is not necessary, however, that the practice be demonstrably unlawful; opposition is "protected activity" whenever the opposition is based on a "reasonable belief" that the employer has engaged in an unlawful employment practice. E.E.O.C. v. Crown Zellerbach Corp. 720 F.2d 1008, 1013 (9th Cir. 1983), quoting Sias v. City Demonstration Agency, 588 F.2d 692, 695-96 (9th Cir.1978).

Richter's remark that he "d[oes not] hire by consent decree" may also be relevant evidence of discriminatory animus. Plaintiff argues that because the Consent Decree is designed to ensure equal employment opportunity for protected classes, the statement is evidence of bias, whether or not it controlled hiring decisions. Defendants argue the remark does not support an inference of racial bias because the Consent Decree does not, in fact, control hiring decisions. They argue that the comment would show racial bias only if it evinced an intent to flaunt a law or disobey a court order.

Although the consent decree does not by its terms govern specific hiring decisions, it does deal with hiring practices in general, so that Richter's remark could be construed as an expression of intent to ignore the Consent Decree. Moreover, a jury might conclude the statement is evidence of bias not because it shows Richter would be willing to violate governing laws or judicial imperatives, but because it shows hostility to what the Consent Decree stands for in a symbolic sense. As the Ninth Circuit noted when speaking of "code words" alleged to be evidence of discriminatory animus,

> [A] reasonable jury could conclude that the intent to discriminate is implicit in these comments. There are no talismanic expressions which must be invoked as a condition-precedent to the application of laws designed to protect against discrimination. The words themselves are only relevant for what they reveal-the intent of the speaker. A reasonable jury could find that statements like the ones allegedly made in this case send a clear message and carry the distinct tone of racial motivations and implications. They could be seen as conveying the message that members of a particular race are disfavored and that members of that race are, therefore, not full and equal members of the workplace.

McGinest v. GTE Service Corp., 360 F.3d 1103, 1117 (9th Cir. 2004), quoting Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1083 (3d Cir. 1996); see also Johnson v. Hugo's Skateway, 974 F.2d 1408, 1413 (4th Cir. 1992)(failure to comply with consent decree can be evidence of discriminatory animus); Lyons v. England, 307 F.3d 1092, 1110 & n.12 (9th Cir. 2002)(derogatory or racial remarks outside the limitations period are admissible to show discriminatory intent).

The cold transcript of Richter's alleged statement is ambiguous: Richter could have been making a plain, nondiscriminatory assessment of his legal obligations relating to hiring; he could have been chafing under what he viewed as improper bureaucratic incursions on his

4

authority as Fire Chief; he could have been expressing hostility to equal employment opportunity for protected classes, or anything in between. But if, as Plaintiff asserts, the Consent Decree and its requirements had become a controversial, hot-button issue that symbolized the parties' conflicts over alleged discrimination, affirmative action, and race, the jury could construe the statement as evidence of discriminatory animus. The import of the statement will depend in large part on context, tone, and credibility factors that must be developed at trial.

Defendants argue that the remark should be excluded precisely because it is ambiguous. The fact that the statement is ambiguous, however, does not inexorably lead to the conclusion that it is unfairly prejudicial or confusing to the jury. Moreover, none of Defendants' authority supports exclusion here. Tennison v. Circus Circus Enterprises, 244 F.3d 684, 689-90 (9th Cir. 2001) held only that evidence of acts which are remote in time and relate to parties other than the plaintiff can be properly excluded. Similarly, Defendants' Eighth Circuit authority suggests, at best, that a district court may properly exclude evidence of discriminatory behavior or "stray remarks" by non-decisionmakers, or individuals other than those whose conduct is at issue. See Spencer v. Stuart Hall Co., 173 F.3d 1124, 1130-1131 (8th Cir. 1999); Callahan v. Runyon, 75 F.3d 1293, 1298 & n.5 (8th Cir. 1996).

Plaintiff will be permitted to testify briefly about his understanding of the Consent Decree. Richter will also be permitted to testify to his own understanding of the Consent Decree to dispel any impression or suggestion that he was prepared to violate a court order.

The Court is well aware that evidence about the Consent Decree and Richter's remark has the potential to lead to unfair prejudice and consume undue trial time. At oral argument on November 28, 2006 – the first day of trial – counsel for Defendants conceded that appropriate limiting instructions could eliminate much of the potential prejudice and confusion set out in his moving papers.

The parties' apparent inability to fruitfully meet and confer, and to narrow the issues presented to the Court, is not only a continuing source of frustration for the Court but an unacceptable impediment to prompt resolution of evidentiary issues here. The Court invited

5

the parties to submit proposed limiting instructions and took the motion under submission until such limiting instructions were submitted. The parties did not submit limiting instructions before opening statements were to be given. On November 29, 2006, while the jury sat waiting, counsel for Defendants again objected to any reference to the Consent Decree. In an effort to give the parties sufficient guidance for opening argument, the Court issued initial instructions it would give to the jury that reflected the contours of the Court's tentative conclusions expressed during oral argument.

Defendants' counsel again objected to admission of evidence relating to the Consent Decree. Pressed by the Court, counsel for the defendants argued <u>for the first time</u> about specific testimony and evidence that should be excluded. Defendants' motions spoke specifically only to Richter's comment and the Consent Decree itself, and argued in general that all evidence relating to the Consent Decree should be excluded. Defendants had ample time after the Court first conveyed its tentative inclination to allow evidence relating to the Consent Decree on November 21, 2006, to develop specific arguments about how specific evidence could be prejudicial. Such argument comes too late now for the Court to consider it as part of the motions in limine.

Defendants will be required to raise objections to specific testimony and evidence as the need arises. The Court will rule on the objections in context. Plaintiff is counseled to bear in mind the limited purposes to which the Consent Decree can be used reflected in the Court's comments at oral argument, in this Order, and the previous Order on motions in limine. The parties are to submit proposed limiting instructions relating to the Consent Decree by the start of trial on December 1, 2006.

**IT IS SO ORDERED.**

Dated: November 29, 2006

_____
THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

6